**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

JOSEPH CURTIS ZONTELLI,

Plaintiff,

v.

CITY OF DULUTH, MINNESOTA;

OFFICER MARC JOHNSON, individually and in his official capacity;

OFFICER ADAM HUOT, individually and in his official capacity;

MINNESOTA BUREAU OF CRIMINAL APPREHENSION (BCA);

and JOHN AND JANE DOES 1-10,

Defendants.

**Case No.: 0:26-cv-00991-JWB-LIB**

**PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS (42 U.S.C. § 1983)**

**(JURY TRIAL DEMANDED)**

**I. INTRODUCTION**

1. Plaintiff Joseph Curtis Zontelli brings this civil rights action pursuant to 42 U.S.C. § 1983 to seek redress for catastrophic, unconstitutional excessive force, and a highly coordinated, twelve-year, multi-agency conspiracy to fraudulently conceal the true nature of these force incidents.

2. In 2014, Plaintiff survived two distinct instances of severe police violence: an execution-style shooting by Defendant Marc Johnson where Plaintiff was shot twice in the back while his weapon arm was physically pinned; and a subsequent retaliatory, closed-fist hospital beating by Defendant Adam Huot.

3. Recognizing these actions violated clearly established Fourth and Fourteenth Amendment law, Defendants immediately engaged in active crime-scene restaging. Specifically, while a large kitchen knife was already present within the room, it was situated away from Plaintiff. Defendants manually repositioned this knife, moving it to an area of the floor that photographic evidence proves was demonstrably empty at the time of the shooting. They designated this newly fabricated location as "Evidence Marker 4" to falsely manufacture an immediate lethal threat. Furthermore, Defendants digitally

RECEIVED
MAY 18 2026
CLERK, U.S. DISTRICT COURT
DULUTH, MINNESOTA

SCANNED
MAY 19 2026
U.S. DISTRICT COURT DULUTH

manipulated the post-incident BCA crime-scene video to align with this staged physical geometry, executing exactly 37 deliberate cuts and time-stamp jumps to conceal the staging.

4. To further conceal the unconstitutional shooting and excessive force, Defendants committed location fraud regarding the November assault, executed a discovery "bait-and-switch" to intentionally suppress and hide the primary "door-kicker's" chest-camera footage, and poisoned the public record by feeding defamatory falsehoods to the media to deter legal counsel from representing Plaintiff.

5. When Plaintiff finally unearthed the physical and photographic proof of this restaged crime scene *pro se* in April and May of 2026, Defendants weaponized their administrative I.T. infrastructure to block his emails to the City Council, illegally invoked Minn. Stat. § 13.39 to retroactively classify historical data, and utilized dead server links ("Gateway Timeouts") and corrupted files to constructively deny his data requests. Plaintiff brings this action to pierce this fraudulent concealment, defeat the equitably tolled statute of limitations, and hold Defendants accountable.

## II. JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343(a)(3) and (4) (Civil Rights).

7. Venue is proper in the United States District Court for the District of Minnesota under 28 U.S.C. § 1391(b)(2).

## III. PARTIES

8. **Plaintiff Joseph Curtis Zontelli** is a citizen of the United States and a resident of Minnesota.

9. **Defendant City of Duluth** is a municipality chartered under the laws of Minnesota, sued for its unconstitutional policies, customs, and its deliberate indifference to the systemic cover-up of police misconduct under *Monell v. Department of Social Services*.

10. **Defendant Officer Marc Johnson** was a sworn police officer acting under the color of state law, who utilized unconstitutional, lethal force against Plaintiff on August 11, 2014.

11. **Defendant Officer Adam Huot** was a sworn police officer acting under the color of state law, who utilized unconstitutional, excessive physical force against Plaintiff during the November 2014 incident.

12. **Defendant Minnesota Bureau of Criminal Apprehension (BCA)** is a division of the Minnesota Department of Public Safety responsible for the forensic investigation, the 37 video cuts, and the ongoing 2026 constructive denial of public data.

13. **Defendants John and Jane Does 1-10** are currently unidentified law enforcement officers, investigators, and municipal I.T. officials who directly participated in the physical restaging of the crime scene, the digital manipulation of evidence, and the 2026 data concealment conspiracy.

## IV. STATUTE OF LIMITATIONS, EQUITABLE TOLLING, AND FEDERAL JURISPRUDENCE

14. Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Federal jurisprudence exclusively governs when a federal civil rights claim accrues, as well as the application of equitable tolling doctrines when a defendant engages in spoliation and fraud.

15. **The Discovery Rule & Fraudulent Concealment:** Under federal jurisprudence, a claim does not accrue until the plaintiff discovers the true nature of the injury and the fraudulent acts concealing the Constitutional violation. *"If the plaintiff... remains in ignorance of the fraud that has been committed, the bar of the statute does not begin to run until the fraud is discovered."* *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

16. **Direct Rebuttal to the Court's April 20, 2026 Order:** In its previous Order, this Court noted Plaintiff was aware he was the victim of force. However, this fundamentally misapprehends the nature of Plaintiff's current claims. While Plaintiff knew he was shot, he was physically pinned and facing away. He was completely unaware that Defendants were actively restaging the crime scene behind his back (moving a knife to Marker 4) and executing 37 digital cuts to the video to manufacture an impenetrable, fraudulent "objective reasonableness" defense. Plaintiff was unaware that his cause of action was being systematically destroyed through spoliation. Furthermore, Plaintiff's Fourteenth Amendment claim for Denial of Access to Courts did not even *exist* or accrue until he discovered this spoliation and the 2026 I.T. blockades in Spring 2026.

17. **Total Stonewalling and 2026 Data Reclassification:** Defendants engaged in highly coordinated, affirmative acts of fraudulent concealment. In April and May 2026, Defendant City of Duluth completely stonewalled Plaintiff's public data requests, failing to produce even a single item of requested data. Instead, the City illegally invoked Minn. Stat. § 13.39 to retroactively reclassify 12-year-old historical files.

18. **Media Poisoning, Search Misdirection, and Defraudment of Counsel:** Defendants actively poisoned the public domain to guarantee Plaintiff remained unrepresented. Because Defendants fed fabricated reports to the press—claiming Plaintiff "came at an officer with a knife"—and deliberately falsified the November assault as occurring at an unrelated "hospital" involving an anonymous "vulnerable adult" with a fabricated "shard of glass," attorneys routinely refused the case. The state's location fraud mathematically ensured no attorney could verify Plaintiff's account of an assault at Gateway Tower via public databases. Furthermore, when Plaintiff secured case review from civil rights attorney Zorislav Leyderman in 2019, Defendant BCA deliberately withheld the primary "door-kicker's" chest-camera video, supplying peripheral angles to validate their fabricated media narrative.

19. **Equitable Tolling via Duress:** As Plaintiff actively sought legal representation between 2014 and 2018, Defendants subjected Plaintiff to approximately 15 to 20 pretextual traffic stops by local law enforcement, yielding zero local traffic citations. These were weaponized displays of state surveillance designed to terrorize Plaintiff into abandoning his search for counsel.

20. **Equitable Estoppel:** Because Defendants weaponized the State's infrastructure to completely obscure the Constitutional violations, stalked Plaintiff under the color of law, and actively defrauded evaluating legal counsel, the statute of limitations did not legally commence until April/May 2026. **Crucially, Spring 2026 marks the very first time in twelve years that Defendants permitted Plaintiff to view any video footage of his own shooting.** Therefore, this action is legally timely, and Defendants are equitably estopped from asserting any time-bar defenses.

## V. FACTUAL ALLEGATIONS

### A. The August 11, 2014 Unconstitutional Shooting

21. On August 11, 2014, Plaintiff was experiencing an acute mental health crisis inside a residential basement room.

22. Defendants executed an aggressive, forced dynamic entry into the barricaded room and deployed a police K-9.

23. At the precise moment Defendant Marc Johnson discharged his firearm, Plaintiff was seated and facing away from the officers. Crucially, Plaintiff's right weapon-arm was physically pinned behind his back.

24. Defendant Johnson shot Plaintiff twice in the back. This use of lethal force against a physically restrained, non-advancing subject constitutes a severe and egregious violation of Plaintiff's clearly established Fourth Amendment rights.

### B. Crime Scene Staging and Digital Concealment

25. Recognizing the criminal and civil liability of this shooting, Defendants engaged in affirmative spoliation of evidence.

26. Defendants manually restaged the physical crime scene geometry. A large kitchen knife, which was already present in the room but located away from Plaintiff, was deliberately moved by Defendants onto a specific area of the floor—subsequently designated as "Evidence Marker 4". Photographic evidence proves this specific area of the floor was completely empty at the time Plaintiff was shot and pinned.

27. To ensure this cover-up remained permanent, Defendants engaged in the digital manipulation of the post-incident BCA crime-scene video. Rather than providing a continuous recording, Defendants executed exactly 37 distinct cuts and time-stamp jumps. These digital

edits were utilized to actively conceal the reality that the floor space at Marker 4 was entirely empty before the knife was manually relocated there.

28. Defendants executed a discovery "bait-and-switch." Relying on a public narrative that exactly "four cameras" recorded the incident, Defendants produced a curated set of files, intentionally burying and withholding the primary "door-kicker's" chest-camera footage.

### C. The November 2014 Retaliatory Assault and Location Fraud

29. In November 2014, Plaintiff was subjected to a severe, retaliatory beating involving Defendant Adam Huot delivering severe closed-fist strikes to Plaintiff's head while Plaintiff was pinned.

30. This excessive force incident occurred at Gateway Tower, a building equipped with mandatory chest-camera recording policies.

31. To suppress the discovery of the Gateway Tower video evidence, Defendants falsified the geographic location of the assault, grafting the incident onto an unrelated dispatch call at St. Luke's Hospital to misdirect evidentiary subpoenas.

32. To justify breaking Plaintiff's teeth off at the gum line during this assault, Defendants falsely alleged Plaintiff was wielding a "shard of glass." BCA forensics found zero latent prints linking Plaintiff to the glass.

### D. First Viewing and the 2026 I.T. Blockade

33. Spring 2026 marked the very first time since 2014 that Defendants permitted Plaintiff to view any of the video footage. Plaintiff immediately recognized the geometric impossibility of the official narrative and uncovered the photographic proof of his pinned arm, and the fact that Marker 4 was completely empty before Defendants manually repositioned the knife.

34. Upon Plaintiff attempting to expose this cover-up, Defendants weaponized the municipal infrastructure to permanently silence him.

35. On April 8, 2026, the City of Duluth completely stonewalled Plaintiff, refusing to produce even a single item of requested data in direct violation of the MGDPA, retroactively classifying the 12-year-old data under § 13.39.

36. On April 24, 2026, the City's I.T. Department executed an intentional email blackout (cihl-exch-01.duluth.local). To confirm this was a deliberate municipal blockade, Plaintiff exercised forensic diligence by attempting to transmit communications utilizing a new cellular device, a newly created email address, and a completely different IP address. The communications were still systematically blocked, proving dynamic I.T. blacklisting.

37. Concurrently, Defendant BCA issued a final administrative closure on May 4, 2026. To simulate compliance, the BCA executed a bad-faith "data dump," providing only irrelevant arrest

records and intentionally withholding every single record regarding the Gateway Tower beating. Furthermore, the purported digital files returned corrupted file error messages, and the BCA's Public Records link returned a fatal server error (DNS_PROBE_FINISHED_BAD_CONFIG).

## VI. CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983 – Fourth Amendment Violation (Excessive Force)

*(Against Defendants Johnson and Huot)*

38. Plaintiff realleges all preceding paragraphs.

39. Defendant Johnson's use of lethal force—shooting Plaintiff twice in the back while Plaintiff's arm was physically pinned—was objectively unreasonable and unconstitutional.

40. Defendant Huot's use of excessive physical force—delivering multiple closed-fist strikes to Plaintiff's head while pinned—was objectively unreasonable and unconstitutional.

### COUNT II: 42 U.S.C. § 1983 – Fourteenth Amendment Violation (Denial of Access to Courts)

*(Against All Defendants)*

41. Plaintiff realleges all preceding paragraphs.

42. Defendants engaged in a highly coordinated conspiracy to deny Plaintiff access to the courts by manually restaging the crime scene (repositioning a knife to Marker 4), digitally manipulating the BCA crime-scene video via 37 distinct cuts and time-stamp jumps, executing location fraud regarding the Gateway Tower beating, executing an email blackout on both old and new IP addresses, and providing corrupted files and dead server links.

43. This systemic, state-sponsored fraudulent concealment paralyzed Plaintiff's ability to seek legal redress.

### COUNT III: 42 U.S.C. § 1983 – Monell Liability (Unconstitutional Custom and Practice)

*(Against Defendant City of Duluth)*

44. Plaintiff realleges all preceding paragraphs.

45. The severe constitutional violations committed against Plaintiff were the direct result of the City of Duluth's entrenched customs, policies, and practices.

46. The City of Duluth maintains a *de facto* policy of deliberate indifference to the use of excessive force, shielding officers from accountability by utilizing municipal attorneys and I.T. departments to retroactively classify data, dynamically block citizen communications, and stonewall victims.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue an Order formally tolling the statute of limitations based upon the federal doctrines of the Discovery Rule, Fraudulent Concealment, Equitable Estoppel, and Duress;

B. Grant Plaintiff's Rule 59(e) / 60(b) Motion to Alter or Amend the Judgment and reopen this case;

C. Accept this Second Amended Complaint as the operative pleading in this matter;

D. Award compensatory damages for the physical and psychological injuries caused by Defendants;

E. Award punitive damages against the individual Defendants;

F. Award Plaintiff costs of suit, and any other such relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 18, 2026

Respectfully submitted,

**Joseph Curtis Zontelli**, *Pro Se*

512 5th Ave NE

Crosby, MN 56441

Phone: (218) 866-5016

Email: zontelli46@gmail.com